So welcome to the circuit. The first case we're going to hear on the calendar is Feng v. Sessions, case number 15-71175. Counsel, are you ready? Yes, Your Honor. Thank you. We are too. Go right ahead. Thank you, Your Honor. Theodore Cox for Ms. Feng. Ms. Feng has had four pregnancies in her lifetime. The first one was legal because she was marriage age, had a marriage certificate, and a birth permit. That was the only legal pregnancy which resulted in her first child. All three other pregnancies resulted in her undertaking extraordinary measures to avoid forced abortion, two of which included fleeing to the United States while pregnant in order to carry these two children to term. The third pregnancy was the one that she submitted under compulsion to an abortion procedure while in China in order to avoid a forcible forced procedure. What was the compulsion in her case? It was economic, Your Honor. She was — there were fines, job, and the fear of a forced abortion. That was the — all three were compelling her to undertake an abortion. And this is a case where the government didn't know about this third pregnancy. Right. So, Counsel, before you — this is an important point. Right. If it was forced abortion, you said there was economic coercion, and you said job, and that's all you said. Was she fired? Was she threatened with being fired? Can you help us out with what exactly do you mean by way of economic coercion? Well, her — the second child, which she brought back from the United States, was not allowed to register in the household, not allowed to go to public school. She applied and was rejected, not allowed medical care. Okay. And so let's stop there because those are in your briefing. And what would be helpful is if you could follow through on those. My understanding through the whole record is that she then went back to work, and she was able to afford to put the second child in private kindergarten. Is that right? Yes, that's right, Your Honor. Okay. But I didn't see any follow-up on the health care, state-sponsored health care. Has that child been denied health care? It was her understanding that the child could not get health — she was told by the family planning authorities that no health care, no public schools. But she did not apply for health care. So that wasn't an issue, even though the schooling was an issue, and she did apply to school. Okay. Is there an allegation in the record about what it would cost or whether they'll be able to afford to pay for a third child to go to kindergarten, private kindergarten? No, the record doesn't talk about payment of a third child to go to kindergarten. So obviously the same penalties of no health care, no public school would apply to the third child. But the — I want the Court to keep in mind that she was trying to avoid a forced abortion, and that's what made it — that's the main thing that was compelling her, to do this, to have this abortion, even without the government knowledge. And I think there's — I would like to suggest certain factors that go into when an abortion like this could be seen as compelled under the DING standard when the government doesn't know. And that would be that was the kid a violation of the policy? Yes. Was it clear that she wanted to have this child, and it was not just a mother who just wanted an abortion? Of course, she was a Christian, a child of God. The baby was a gift of God. She didn't want the abortion. Did she reasonably, incredibly fear a forced abortion if the government found out? And I think that's clear from this record. She said it. She was found credible. She did believe that if the government found out. And it's worse — I mean, as bad as a forced abortion in this case is, as bad as it — and psychologically harmful to her, she knew that the alternative of being grabbed and thrown in a van and taken for an abortion is a far worse circumstance. When you say she had a fear of forced abortion, what were the circumstances? I mean, did a family planning official come up to her and tell her, you know, unless you get an abortion, X is going to happen or what? No, because — no. What gave her the fear of forced abortion? Well, she's an educated woman, MA degree. She did research. She looked online. She thought, she believed mistakenly that having a child in the United States would exempt that child from counting in the family planning policy. Is that what her research told her? Did she cite some research? You said she did research. Did she cite some research result to corroborate that? No, not to that point. She said she did research to find out if there might be an exception, as in, for example, in the countryside, the first child's a daughter, then you wait four years, you can usually be permitted an exception and have a second child. And she found no exception that applied to her. So — but she thought of running away to Shandong province, and the relatives there said, no, it's even worse there. You can't — there's no escape there. And that's why — I mean, she's an educated woman who, by her own not-specific research, was aware of the consequences of a government find-out. And so she was clever enough, and she should not be penalized for being clever enough, to avoid being found out. By winter clothing, by going to work through the basement car parking lot, and by, you know, by the safe workplace at the first place of Hewlett-Packard, the boss was kind to her and did not rat her out with her pregnancy and allowed her to continue working until near full term. But, counsel, she said they told her that she had to submit to an IUD insertion at the hospital. But she didn't testify that ever happened, despite the mandatory nature of the official's statement, or that the family faced other consequences for their ongoing and open violation. That was for the second child. Yes. And that was the — aside from the medical and schooling benefits, she did not suffer other consequences for that second child, the second — that is, the first illegal child. However, in this case, we also have a second illegal child born in the United States who is — population control policy puts her as an extreme risk, not only for extreme economic penalties beyond school and medical deprivation, but also as a prime target for sterilization, according to Professor Cohen, who has actually cited sources in Beijing itself, where she's from. That that would be a likely consequence now with a double violation of going back to China at this point. And so that — I might submit that because she was smart enough to evade authorities, many women are not, she should not be penalized for making the Hobson's choice of either a voluntary — not violent coerced, but not by physical restraint abortion at a hospital in time of place early in pregnancy that she could choose, rather than maybe being fined out. And as she states, there could be forced abortions right up to the ninth month. Counsel, did you want to save some time? Yes, I do. Thank you, Your Honor. Okay. All right. Good idea. Good morning, Your Honor. May it please the Court, Rachel Browning for the Respondent. In this case, the record does not compel the conclusion that Petitioners suffered past persecution or have a well-founded fear of persecution based on the family planning policies of their local — Counsel, isn't there such a thing as emotional or circumstantial coercion? When she was told if she became pregnant again, there would be an induced abortion, why isn't this amount to emotional coercion? Well, first of all, Your Honor, I don't believe she was given that specific a warning. She was — they were given a warning after they returned to China with their second child, basically saying you could face punishment. There was no specificity with respect to what that punishment would be. She was told to have an IUD inserted. They chose not to, and there were no consequences for that. So based on the fact that under those circumstances, two years later then, when she decides she needs to have an abortion, I don't know that that — that one warning two years prior set up the kind of coercive pressure that this Court had in mind when it decided in Ding that a forced abortion or forced sterilization, there still has to be — I mean, it doesn't literally mean in the procedure itself someone is physically restrained, but there still has to be sufficient government action that's brought to bear in that moment. And by petitioner's own testimony, no one was aware of her pregnancy. She basically weighed her options and determined that the best — the best thing she could do in that moment was to have the abortion that she didn't want. And simply making a choice that is not the optimal choice, I don't think that rises to the level of force or coercion that this Court had in mind. When she was unable to enroll Andy in school, why doesn't this undercut the BIA's conclusion that they did not face any sanctions at all? Wasn't that a sanction? I suppose that could be interpreted as a sanction, but we really — the petitioners didn't provide a whole lot of information exactly how that amounted to a sanction, like what the Board would have needed more, the judge would have needed more information about what it cost them to then find a private school for their son, and what their particular economic circumstances was such that that — having to enroll him in that created the kind of economic deprivation that would rise to persecution. There simply wasn't a lot to go on in the information that was provided in either their written statement or their testimony. What about health care? Will this entitle both the children, you know, two and three, from health care for the rest of their lives? I'm not prepared to draw that conclusion from this record. It could mean that the state won't — or the government won't provide that health care, but there are private clinics, and again, that just wasn't made clear in either their testimony or the evidence that was presented, that that would be such a hardship to them that that rises to the level of persecution. In this case, she had choices, which some people don't have, and she made the choice to undergo an abortion, despite — Well, I'm trying to figure out about the economic coercion. That's what bothers me most about this case, because it seems to me to be no small thing to say this child's not going to be entitled to public education or public health care counsel, particularly in a place like mainland China, and now there's a third child. And so the question becomes, will she have to quit her job in order to homeschool these children? If so, that starts to sound and feel a whole lot like economic coercion that's been recognized in case law. Is it the case that she'll be able to work and afford to pay for the private kindergarten? I don't know what the record tells us about that, but it seems to me to be pretty close to the line. Is there any case law anywhere that discusses this nexus between economic coercion and resistance to the one-child policy? Not that I'm aware of that we've cited on our brief, and I don't want to misrepresent what the Board said. My point is simply on this record, all of those factors that you illuminate, none of that was really discussed, either in the testimony, in a written statement, even in the motion to reopen itself. Well, yes, but when you say other than in testimony, she was found credible, right? Yes. And she did indicate that the second child was, indeed, was denied access to public education. But I think, as I indicated in my earlier question, she also indicated she was able to ultimately afford that. And I don't see anything in the record about the third pregnancy. But why is it your response to Judge Nelson's question? I think you're taking the position that there wasn't any evidence about coercion. And since her testimony was deemed credible, I'm having a hard time with your response. I guess I'm not clear what the— Her testimony is evidence, right? Yes, but her testimony was not that it's going to cost me X, Y, and Z to provide education and I'm not going to have to homeschool my children. She never made any of those. Those were not her test—that was not her testimony. I would think one prong of economic coercion would be the economic standing of the Petitioner or the family. It's not too well developed in this record, except that I get some feeling that they were relatively well off. I mean, you know, they were able to travel to Seattle and buy a house there with the proceeds of their selling their house in Beijing. She said she quit her job because there was too much travel. But I don't know exactly what her job was, but a job that involves a lot of travel. According to the records— I think with HP, it must have been a fairly well-paying job. But it's not all too well developed. In other words, it seems to me economic coercion has to balance, you know, what her economic means are and then what's being deprived. That's exactly right, Your Honor. And that's just — I mean, it was Petitioner's burden to demonstrate, based on their financial situation and the financial ramifications of having a second or a third child, that that — that those ramifications would rise to the level of persecution.  You think that's the Petitioner's burden? It's absolutely the Petitioner's burden to demonstrate their prima facie eligibility for asylum. In this context, that requires showing that the family planning policy of their province would be enforced against them with tactics that amount to persecution, whether that be forcible abortion, forced sterilization, or economic penalties that would be so oppressive, given their situation, that that becomes persecution. But rather than arguing that there was no evidence, your real argument, it sounds like, is that you think she didn't meet her burden. I think both of those are true. They didn't submit evidence. It was their burden to submit evidence that would establish that this supports their well-founded fear of what — Well, I don't mean to beat a dead horse, but why is it that you don't accept her testimony as some evidence? It's her subjective — or her belief about what would happen, and I — Well, and in this particular case, it's also what happened to her second child, so it's not entirely speculative. And she was deemed credible. That's — and again, I don't mean to split hairs, but it's certainly some evidence. I understand what you're saying. Yes. I think what the judge did and what the Board ultimately did was they weighed that with the other evidence and her other testimony, which was that despite their failure to follow the instructions that were given to them by their local family planning officials, nothing happened other than her — you know, when she went to try to enroll her child in one school, that one school said no. But I think that's still not enough in order to establish a well-founded fear of persecution, given all of these other factors in the record, as Judge Tsushima pointed out, their particular financial standing. I'm not sure if that — Well, counsel, if she pleaded poverty, would that have made a difference? If they had pleaded — sorry? Poverty, if she didn't — couldn't afford all of this. I do. I think if there had been more testimony or evidence given showing that under their particular circumstances, these financial burdens would just have, you know, been onerous, that wasn't their testimony. Thank you. Anything further? I know we didn't really get into the motion to reopen, but I would just ask that that petition be denied as well, because the evidence was simply not sufficient to demonstrate that the Board should reopen proceedings. Thank you. Thank you, counsel. Madam Clerk, could you put two minutes on the clock, please? I think we took up a lot of time with questions. Thank you. Thank you, Your Honors. There is some evidence in the record about the financial constraints, and I think she had — her thinking in submitting to the abortion was in order to keep the Dell job — also, it must have — it sounds like a, you know, relatively good job because of the extra cost for the child care and medical expense for the child who is not covered by those things. And then it turned out that she left that job, there was multi-determined, she was upset about the abortion, there was too much travel. Both of those are true, but not losing that job was part of her thinking, but then she lost it anyway, or gave it up anyway. So it's not that she had enough just to — enough to — not to be concerned about foregoing those — the school and health benefits. And moreover, if I might add that, according to both the IJ and the BIA, only physical restraint and force of that nature counts, and so they didn't even care about how much — they didn't discuss or evaluate at all whether or not there was an economic persecution issue because it didn't — it all didn't matter in the courts below in this case. And again, I would just note on the motion to reopen, certainly the way the court handled Professor Cohen's expert opinion, I think, should be visited and rejected, because they just — they treated it almost like an affidavit by an attorney citing some evidence, just accounting for nothing except for the evidence referred to, except he's an expert. It's not an attorney's affidavit, and I do ask the Court to consider that. Thank you, Your Honors. Thank you, counsel. Thank you both. The case will be submitted. The next case on the calendar is Nowak v. Sessions, 15-71187. That case has been submitted on the briefs.
judges: D.W. Nelson, Tashima, Christen